[No. 21433. Department One. December 6, 1928.]

ANGIE WAMSLEY, *Respondent*, v. TOM ROSTAD, *as Administrator, Appellant.*[1]

*Edward C. Butler, Cox & Martin,* and *W. H. Winfree,* for appellant.

*Hanna, Miller & Hanna,* and *E. J. Doyle,* for respondent.

TOLMAN, J.—Respondent, as plaintiff, sued upon an alleged oral contract made with her sister Florence, now deceased, in 1897. She alleged that, at that time, she and her sister were both living at home with their mother; that the services of one were needed at home to care for the mother, and that each was desirous of going out from home and seeking gainful employment. Under these circumstances, it is alleged that the sis-

[1]Reported in 272 Pac. 722.

ters agreed between themselves that Florence should be the one to seek outside employment and that she should pay, or give, to the plaintiff half of what she might earn, or half of what she might make. Other facts will appear as we proceed.

The cause was tried to the court, sitting without a jury, resulting in a judgment awarding to the plaintiff one half of the estate of the deceased, and from that judgment the administrator has appealed.

It appears that at the time the alleged agreement was made, the mother was a widow, and was the mother of a large family of children, all of whom had then left home except these two sisters and a younger brother. There is no evidence as to the mother's financial situation then or during the time which intervened before her death in 1925.

It is not denied that respondent remained at home with her mother, and presumably she rendered to her mother such services as a daughter should. Likewise it seems to be conceded that Florence left home at about the time stated and never returned, except for brief visits. She seems to have been gainfully employed to some extent, at one time as a cook, but the record is mainly silent as to what she did, and entirely so as to what she earned. It does appear that she went to Alaska in 1905 or 1906, and spent the greater part of her time there during the remainder of her life. She was married to Tom Rostad in 1920, and she died in 1926 at a hospital in Seattle. Her husband, who survived, was duly appointed administrator of her estate.

Respondent being barred by the statute from testifying as to transactions had with the deceased, the contract is sought to be proven by the testimony of others, mainly other sisters, who detailed from memory a number of different statements said to have been

made by the deceased at various and widely different times, all long after the time when she left home, to the effect that she had agreed with her sister Angie that if she, Angie, would stay at home and care for her mother, "I would give her half of what I make," or "I will give her half of my earnings for taking care of mother." In still another conversation her statement was said to be "part of my earnings," instead of half.

It further appears that, before deceased went to Alaska, she had purchased stock in her own name in a savings and loan company on the monthly payment plan; that she said she was taking this stock for her sister Angie, and the certificate evidencing ownership of the stock, though issued in the name of the deceased and unendorsed, was, at some time prior to 1914, delivered to the respondent and was in her possession when Florence died. This certificate was surrendered to the administrator on demand after his qualification, and the stock forms the bulk of the estate. No issue was raised in this case as to whether there had been an equitable assignment of this stock by the deceased to the respondent, and we are not now called upon to consider that question.

A number of defenses were pleaded, but as we think the statute of limitations is controlling, we confine our discussions to that issue.

This is not a case based on a contract of direct employment such as *Doty v. Spokane & Eastern Trust Co.*, 146 Wash. 95, 261 Pac. 788; *Ah How v. Furth,* 13 Wash. 550, 43 Pac. 639; and *Morrissey v. Faucett,* 28 Wash. 52, 68 Pac. 352.

We think the rule announced in the two earlier cases and tacitly followed in the later case goes as far as is permissible, and we have no inclination to extend it. In each of these cases there was a direct employment

and the person to be charged was at all times bound to pay the person employed either a specific wage or a reasonable one, but the time of payment was indefinite and under the peculiar circumstances of each case, years might reasonably be expected to pass before a time of settlement arrived.

Here, there was no direct employment. It was simply agreed that one should render to the mother the services that each was equally bound to render, and the other should be released upon the consideration of paying to the one serving a half of what she should earn or make. Passing over the indefiniteness of the amount to be paid, it is apparent that, until the person to be charged earned something, there was no liability, and as she earned and received, or made, each individual dollar, a liability arose and half thereof became immediately due and payable under the contract.

There is no direct evidence that the deceased earned or made anything, but if we are to ignore the possibility of acquiring by gift, descent or devise, and from the fact that she died leaving assets, draw the inference that she earned or made those assets, then the half thereof became due and payable as and when each item was received, or each dollar earned, and the statute began to run from the date of such receipt.

It is apparent that the building and loan stock was purchased as early as 1905, but on deferred payments. It is also apparent that the stock was paid for and a certificate issued and delivered to respondent as early as 1914. If the delivery of the certificate to respondent was intended and received as a payment (which the surrender of the certificate by the respondent to the administrator would seem to deny), then the answer is that the statute has fully run since the date of that payment. No other payment at any time of so much as a single dollar is even suggested.

Moreover, the deceased married in 1920. Presumably our community property law applies, since no other law is pleaded or proved. From the date of the marriage, the earnings of the deceased (she at all times up to her death having lived with her husband), belonged to the community, and earnings subsequent to the marriage could not be diverted from the community by the prior contract.

Therefore upon the marriage of the deceased the contract was rendered incapable of further performance and the deceased was thereupon (if not before) bound to make immediate payment of the half of her previous earnings and the statute would run from that date.

Under either theory, the statute of limitations had fully run before the action was instituted, and the judgment must be reversed.

Reversed with instructions to dismiss.

FULLERTON, C. J., MITCHELL, and BEALS, JJ., concur.